IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**ANGEL JOHAN AHEDO SALAZAR,**

      Petitioner,

v.                                                                                          Case No.1:26-cv-00251 WJ-JHR

**GEORGE DEDOS,** Warden,
Cibola County Correctional Center;
**MARISA FLORES,** Acting Director,
Immigration and Customs Enforcement's Enforcement
and Removal Operations, El Paso Field Office;
**TODD LYONS,** Acting Director,
U.S. Immigration and Customs Enforcement,
**KRISTI NOEM,** Secretary,
Department of Homeland Security;
**PAMELA BONDI,** Attorney General; and
**DARREN MARGOLIN,** Executive Office for Immigration Review,

      Respondents.

## MEMORANDUM OPINION AND ORDER GRANTING WRIT OF HABEAS CORPUS

**THIS MATTER** is before the Court on the Petition for Writ of Habeas Corpus filed by Petitioner Angel Johan Ahedo Salazar **[Doc. 1]** ("Petition"), the Court's Order to show cause **[Doc. 3]**, Federal Respondents' Response to Petition for Writ of Habeas Corpus **[Doc. 6]** ("Response") and Reply to Respondents' Response to Petition for Writ of Habeas Corpus **[Doc. 5]** ("Reply").  The Court **GRANTS** the Petition for Writ of Habeas Corpus and **ORDERS** Petitioner's immediate release.

### FACTUAL AND PROCEDURAL BACKGROUND

Petitioner Angel Johan Ahedo Salazar was born in and is a citizen of Mexico.  **[Doc. 1 at 5]**.  In 2004, when he was only six months old, Petitioner Salazar was brought into the United

1

States without inspection.  **[*Id.* at 12]**.  This was Petitioner's only illegal entry into the United States and, at the age of six months, he had no control or say over the matter.  Since 2004, he has lived continuously in the United States and more specifically, in the State of Minnesota.  **[*Id.*]**.  Petitioner has siblings who are United States citizens one of whom is a brother with the rank of Lance Corporal serving in the United States Marine Corps.  The record before the Court establishes that Petitioner began working at a young age to support his family and his family depends on him for both financial and emotional support.  **[*Id.*; Doc. 1-1 at 8-11]**.

Petitioner Salazar is engaged to a U.S. citizen and will be eligible to begin the process of a family petition and consular processing once he and his fiancée marry.  **[Doc. 1 at 12-13]**.  Petitioner is also eligible for EOIR-42B Cancellation of Removal and is submitting that application to the immigration court.  **[*Id.* at 17]**.  Last, Petitioner is eligible for a U-Visa as a cooperating victim of domestic assault in St. Paul, Minnesota and plans to pursue a U-Visa.  **[*Id.* at 17; Doc. 1-1 at 13]**.  Important to the Court's consideration is the fact that Petitioner has no criminal history in the United States or elsewhere.  **[Doc. 1 at 17]**.[1]

Until January 11, 2026, Petitioner had never had contact with Immigration and Customs Enforcement ("ICE") or Customs and Border Protection ("CBP").  **[*Id.* at 16]**.  On January 11, 2026, he was apprehended by ICE in Forest Lake, Minnesota.  **[*Id.*]**.  At the time of filing his Petition, Petitioner Salazar had been in ICE custody for 17 days without a Notice to Appear.  **[Doc. 1 at 16; Doc. 1-1 at 5]**.  His Petition indicates he anticipates being charged as an alien who entered the United States without inspection in violation of 8 U.S.C. § 1182(a)(6)(A)(i).  He was transferred out of Minnesota by ICE and is now detained at the Cibola County Correctional Facility

---

[1] The Court commends Petitioner and strongly encourages him to continue his efforts to legalize his status in the United States.

in Milan, New Mexico.  **[Doc. 1 at 3; Doc. 1-1 at 3]**.

Petitioner Salazar filed his Petition in the United States District Court for the District of Minnesota and said Petition was subsequently transferred to this Court.  **[Doc. 1 at 1; Doc. 7]**.  The Petition seeks Mr. Salazar's immediate release.  **[Doc. 1 at 17]**. On January 28, 2026, this Court issued an Order directing the Respondents to show cause why the Petition should not be granted.  **[Doc. 3]**.  The United States filed a Response on behalf of Respondents on February 2, 2026.  **[Doc. 6]**.  Respondents contend that Petitioner is "a noncitizen present in the United States who entered without inspection.  Thus, he is 'deemed' to be an 'applicant for admission' under [8 U.S.C.] § 1225(a)(1)." **[*Id.* at 6]**.  Therefore, Respondents assert, he is statutorily subject to mandatory detention.  **[*Id.* at 2]**.  The Response also states that the facts as set out in the Petition are not disputed and the court can resolve and rule on the Petition without an evidentiary hearing.  **[*Id.* at 9–10]**.  Petitioner filed the Reply, arguing that his warrantless detention is more properly considered under 8 U.S.C. § 1226 and he should be immediately released from custody. **[Doc. 5]**.  The Court agrees that this matter can be resolved without an evidentiary hearing.

## JURISDICTION AND VENUE

This case was originally filed in the District of Minnesota.  **[Doc. 1 at 1]**.  The case was transferred to this New Mexico court based on undisputed facts disclosed on the record that Petitioner is detained at and in the physical custody of the Cibola County Correctional Facility in New Mexico. **[Doc. 1 at 1 at 3; Doc. 1-1 at 3; Doc. 6 at 1, 2-5]**.[2]  Jurisdiction and venue are proper in the District of New Mexico under *Rumsfeld v. Padilla*, 542 U.S. 426, 443 (2004).

The Court's jurisdiction to grant the Petition draws from its authority under 28 U.S.C.

---

[2] The Petition named a Minnesota custodian as a Respondent.  This Court has ordered New Mexico custodians to be substituted for the Minnesota Respondent.  **[Doc. 12]**.

§ 2241, *et seq.,* and under the All Writs Act, 28 U.S.C. § 1651(a), which permits federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." *See* 28 U.S.C. § 2241(a) ("Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions.").

## LEGAL STANDARDS AND ANALYSIS

### I.     Federal Statutory Detention Authority.

Federal immigration law vests the United States Attorney General with two primary sources of authority to detain noncitizens pending a decision on removability: 8 U.S.C. § 1225 and 8 U.S.C. § 1226. The distinction between these provisions is the primary dispute argued by the parties and is material because each statute establishes different detention processes and affords different procedural protections.

Section 1226 governs the detention of noncitizens who are already present in the United States and are placed in removal proceedings. *See Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018) ("[Section] 1226 applies to [noncitizens] already present in the United States" and "creates a default rule for those aliens."); 8 U.S.C. § 1226(a). With the exception of certain narrowly defined provisions requiring detention of individuals with specified criminal history, § 1226 permits the Attorney General to detain noncitizens pending a decision on removability or to release them on bond or conditional parole. *See* 8 U.S.C. § 1226(a)(2)(A)–(B); § 1226(c)(1)–(4); *Jennings*, 583 U.S. at 303 ("1226(a) . . . permit[s] . . . but [does] not requir[e] . . . the Attorney General to issue warrants for [the] arrest and detention [of]" noncitizens already present in the United States; "Section 1226(a) also permits the Attorney General to release those [noncitizens] on bond[.]").

Section 1225, by contrast, governs the inspection and detention of certain "arriving aliens" and

other noncitizens seeking admission to the United States. *See, e.g.*, §§ 1225(b)(1), (b)(2)(A). Under § 1225(b), detention is generally mandatory and does not permit release on bond or parole, subject to limited statutory exceptions. *See* 8 U.S.C. §§ 1225(b)(1)(B)(iii)(IV), (b)(2)(A).

Detention under § 1225 is mandatory and does not afford procedural protections like warrants and bond hearings. Detention under § 1226 is discretionary and due process protections attach for individuals detained under § 1226. Thus, a threshold question in this case is whether Petitioner is detained pursuant to § 1225(b) or § 1226(a).

**A. Petitioner Is Not Subject to Mandatory Detention Under 8 U.S.C. § 1225(b).**

Respondents assert that Petitioner's detention is mandated by § 1225(b)(2)(A). **[Doc. 6 at 5-8]**. Petitioner contends that his detention is instead properly classified under § 1226(a), and is therefore discretionary, not mandatory. **[Doc. 1 at 2-3, 6-11; Doc. 5 at 3]**. In line with other courts in this District and the overwhelming majority of courts across jurisdictions, the Court agrees with Petitioner. *See Melchor-Rios v. Ortiz*, No. 2:25-cv-01055, 2025 WL 3764775, at *2 (D.N.M. Dec. 30, 2025).

The question of whether immigration detention is under § 1225 or §1226 is a question of statutory construction. It is a fundamental precept of statutory construction that statutes are read as a whole and not in isolation. *Samentar v. Yousef,* 360 U.S. 305, 309 (2010). The words of a statute must be read in context with a view to their place in the overall statutory scheme. *San Francisco v. EPA,* 604 U.S. 334, 350 (2025).

When read within the context of the statutory and regulatory scheme governing immigration detention, it is clear that § 1225(b)(2)(A) applies in circumstances not present here — the inspection and detention of individuals seeking admission at or near the border. *See Tanchez v. Noem*, No. 2:25-cv-1150, 2026 WL 125184, at *7 (D. Utah Jan. 16, 2026) ("§ 1225 applies to

5

noncitizens at or near the border who are entering or who have recently entered[.]"). Within that context, properly understood, Petitioner — who was brought into this country as a six-month-old infant, has lived in the United States for more than 20 years, and was apprehended in the interior of the United States — is not subject to mandatory detention under § 1225(b)(2)(A).

In determining this question of statutory construction, the Court first examines the plain text of the relevant statutory text. Section 1225(b)(2)(A) applies to "inspection of other aliens," § 1225(b)(2)(A), and states:

> Subject to subparagraphs (B) and (C), in the case of a[] [noncitizen] who is an applicant for admission, if the examining immigration officer determines that a[] [noncitizen] seeking admission is not clearly and beyond a doubt entitled to be admitted, the [noncitizen] shall be detained for a proceeding under Section 1229a of this title.

The beginning question, then, is the scope of the detention authority Congress conferred by § 1225(b)(2)(A).

Respondents argue that the clear statutory language mandates detention of any noncitizen present in the United States, without regard to the duration of the noncitizen's presence in the United States or the alien's distance from the border. **[Doc. 6 at 5-8]**. Relying on § 1225(a)'s definition of "applicant for admission," which comprehends a noncitizen who either "arrives in the United States" or who is "present in the United States who has not been admitted," Respondents argue that any citizen who is present in the United States without lawful status, in effect qualifies as an "applicant for admission." **[*Id.*]**.

This argument finds some support in the text of the Immigration and Nationality Act ("INA"). 8 U.S.C. § 1101(a)(13)(A) defines "admitted" as "the lawful entry of the [noncitizen] into the United States after inspection and authorization by an immigration officer." On Respondents' view, a noncitizen present in the United States who, at one time, entered the United States without inspection and authorization could qualify as an "applicant for admission." However, even though

6

the statutory definition of applicant for admission might appear to encompass any noncitizen present in the United States who entered without inspection or authorization, section 1225(b)(2)(A), by its terms, authorizes an immigration officer to detain a noncitizen who is not admitted, only if that noncitizen is "*seeking* admission." *See* § 1225(b)(2)(A) (emphasis added).

Respondents appear to understand "applying" to necessarily imply seeking, such that an applicant for admission is also one seeking to be admitted. **[Doc. 6 at 5-8]**. By that token, Respondents assert that § 1225(b)(2)(A) authorizes — indeed, requires — the detention of any noncitizen present in the United States who has not been lawfully admitted. Respondents are arguably correct that the word, "apply," may in common usage mean seek, such as in seeking a benefit such as employment or admission. *See* American Heritage Dictionary of the English Language 87 (4th ed. 2006) (among other definitions, "apply" may mean "[t]o request or seek assistance, employment, or admission").

But in the context of statutory construction, the statute does not turn on ordinary usage alone. Rather, it turns on how Congress used the phrase "seeking admission" within the INA's detention framework. *San Francisco v. EPA,* 604 U.S. at 350. Viewed in the context of the overall statutory scheme, Respondents' interpretation would stretch the text of § 1225 beyond its plain language and collapse the distinction Congress established between discretionary detention under § 1226 and mandatory detention under § 1225.

Section 1225(b)(2)(A), then, attaches only if the noncitizen subject to inspection qualifies both as an applicant for admission and as seeking admission. If Congress intended "seeking admission" to bear an identical meaning to "applicant for admission" it need not have included both phrases. Generally, when subject to competing interpretations, statutory language is not interpreted to include redundancies. *Gustafson v. Alloyd Co., Inc.*, 513 U.S. 561, 574 (1995). This longstanding

7

canon of statutory interpretation counsels against interpreting "applicant for admission" as coterminous with "seeking admission" within the meaning of the mandatory detention framework set forth in § 1225.

Moreover, the Laken Riley Act, Pub. L. 119-1, 139 Stat. 3 (2025), recently amended section 1226's mandatory detention provision, § 1226(c), to require detention of individuals who are inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i), as being present without admission or parole, *and* are charged with, arrested for, convicted of, or have admitted to committing certain crimes. *See* 8 U.S.C. § 1226(c)(1)(E). Interpreting § 1225(b)(2)(A) to require detention of "*all* noncitizens who have not been admitted," regardless of criminal status, would render this amendment meaningless. *Elias v. Knight*, No. 1:25-cv-00594, 2025 WL 3228262, at *6 (D. Idaho Nov. 19, 2025).

In addition, the statute's use of the active, present-tense verb forms "seeking" and "examining" reflects Congress's focus on detention during the pendency of the inspection process rather than on continued detention after that process has concluded. *Cortez-Gonzalez v. Noem*, ---F. Supp.----, 2025 WL 3485771, at *4 (D.N.M. Dec. 4, 2025) ("The active construction of 'the phrase "seeking admission" necessarily implies some sort of present-tense action.'") (quoting *Martinez v. Hyde*, 792 F. Supp. 3d 211, 218 (D. Mass. 2025))). The phrase describes a current legal posture — participation in inspection and admissibility determinations — rather than a generalized or enduring objective to enter the United States. *See Tanchez*, 2026 WL 125184, at *8 ("These active verbs suggest a moment in time when a noncitizen is crossing or has recently crossed a border, not an indefinite status that applies whenever a noncitizen charged with inadmissibility encounters an immigration official.").

The surrounding provisions of § 1225 reinforce this understanding of the statutory framework. Section 1225(b)(2) is included as part of a statutory section governing the inspection of noncitizens

at or near the border, and its neighboring provisions repeatedly reference noncitizens who are arriving in the United States or undergoing initial admissibility determinations. *See, e.g.*, § 1225(b)(1) (entitled "*Inspection* of [noncitizens] *arriving* in the United States and certain other aliens who have not been admitted or paroled") (emphasis added); § 1225(b)(2)(c) (providing a procedure for noncitizens "arriving on land . . . from a foreign territory contiguous to the United States."); § 1225(b)(2)(B) (providing an exception for noncitizens who are members of a ship crew or "stowaway[s]"). An understanding that § 1225 is limited spatially and temporally to noncitizens arriving or recently arrived at the border is also reflected in the section's title, "Inspection by immigration officers; expedited removal by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing." 8 U.S.C. § 1225 (title); *Mendoza Gutierrez v. Baltasar*, No. 25-cv-2720, 2025 WL 2962908, at *6 (D. Colo. Oct. 17, 2025) (finding that section 1225's title indicates congressional intent for the section to "apply to inspections that occur at the ports of entry or near the border"); *see also Dubin v. United States*, 599 U.S. 110, 120–21 (2023) (a statute's title and a section's heading are viable tools of statutory construction). Read as a whole and in context, § 1225 applies to the immigration inspection process.

Properly construed as part of the overall statutory framework, Section 1225 applies only to noncitizens who are placed in the statutory process for admission, including inspection and admissibility determinations at the border or port of entry. By contrast, § 1226 governs detention once a noncitizen has been placed in removal proceedings, regardless of whether the noncitizen may still be understood, in statutory terms, to be an applicant for admission. The undisputed facts demonstrate that Petitioner was brought into the United States at an age when he was not even capable of forming an intent to apply for or seek admission, he has continuously resided in the United States since 2004 when he was six months old, and at the time of the filing of the Petition,

had not even received a notice to appear. He is not an individual apprehended at or near the border, nor can he be properly characterized as arriving aliens within the meaning of § 1225(b). Thus, he cannot be said to be "seeking admission" to the United States so as to justify detention under § 1225(b)(2)(A).

Courts across jurisdictions have consistently rejected the proposition that current residents of the United States may be retroactively reclassified as arriving aliens for purposes of mandatory detention under § 1225(b). *See, e.g.*, *Castañon-Nava v. DHS*, 161 F.4th 1048, 1061–62 (7th Cir. 2025); *Requejo Roman v. Castro*, --- F. Supp. 3d ----, 2026 WL 125681, at *5 (D.N.M. Jan. 12, 2026); *Tanchez*, 2026 WL 125184, at *5–16; *Luna v. Warden*, No. 25-cv-565, 2025 WL 3787494, at *8–11 (W.D. Tex. Dec. 29, 2025); *Falcon v. Florentino*, No. 25-17164, 2025 WL 3677578, at *2–3 (D.N.J. Dec. 18, 2025); *Chavez v. Director of Detroit Field Office*, No. 4:25-cv-02061, 2025 WL 2959617, at *7 (N.D. Ohio Oct. 20, 2025), *report and recommendation adopted*, 2025 WL 3187080 (Nov. 14, 2025).

The Court acknowledges that the United States Court of Appeals for the Fifth Circuit has recently adopted the minority position on this issue. *Buenrostro-Mendez v. Bondi,* 166 F.4th 494 (5th Cir. Feb. 6, 2026). However, at this time neither the United States Court of Appeals for the Tenth Circuit nor the United States Supreme Court has handed down a binding, precedential opinion and, until either of those courts weigh in, this Court has and will continue to follow the majority position. The decisions of a limited minority of courts that have endorsed Respondents' interpretation of § 1225 does not change the Court's conclusion, which rests on the plain language of the relevant statutory text as properly understood within the mandatory and discretionary detention framework codified in the INA.

Apart from § 1225(b)(2), Respondents identify no statutory authority that would require

10

Petitioner's continued mandatory detention. Respondents do not persuasively argue that § 1225 is intended to apply retroactively to any noncitizen who entered the United States without admission or inspection irrespective of when entry was made. Therefore, the Court concludes that § 1226(a) governs Petitioners' detention and that Petitioner Salazar is being erroneously subjected to mandatory detention under § 1225.

### B. Petitioner's Continued Detention Violates the Constitution.

Having determined that Petitioner is not subject to mandatory detention under § 1225(b), the Court must determine whether the appropriate remedy is immediate release of Petitioner or whether a bond hearing is sufficient. Petitioner seeks immediate release under 28 U.S.C. § 2241. The Court concludes that, based on the specific facts of this case, Petitioner's continued detention is not warranted and violates the Constitution. Accordingly, granting the Petition and ordering Petitioner's immediate release from custody is the appropriate remedy.

Although immigration removal proceedings are civil, the Supreme Court has long acknowledged that immigration arrests and detentions are "seizures" within the meaning of the Fourth Amendment. *United States v. Brignoni-Ponce*, 422 U.S. 873, 884 (1975). The INA authorizes immigration officers to make warrantless arrests only in limited circumstances, including when an immigrant is "entering or attempting to enter the United States in violation of any law or regulation . . . regulating the admission, exclusion, expulsion, or removal of aliens," and when the officer has reason to believe the immigrant is in violation of such laws or regulations and is a flight risk. 8 U.S.C. § 1357(a)(2), (5)(A)-(5). None of those circumstances appears to have been present in this case.

Absent obtaining a warrant, the government was required to secure a prompt judicial probable cause determination to justify Salazar's continued detention. *See County of Riverside v.*

11

*McLaughlin*, 500 U.S. 44, 57 (1991); *Gerstein v. Pugh*, 420 U.S. 103, 107–08 (1975). Respondents obtained no probable cause determination. Nor does it appear on the record before the Court that they could have, given there is no evidence indicating Respondents had any reason to believe Petitioner had engaged in criminal conduct. **[*See* Doc. 6]**. Petitioner establishes that he has been present in the United States since 2004. Petitioner possesses no criminal record. Respondents' Response does not dispute any of these facts. **[*Id.* at 9-10]**. The Petition therefore demonstrates that Petitioner Salazar's continued detention is unreasonable under the Fourth Amendment.

Petitioner Salazar raises additional arguments that his arrest and detention constitute violations of his procedural and substantive due process rights. **[Doc. 1 at 16, Count II]**. However, having found that Petitioner's continued detention is unreasonable under the Fourth Amendment, it is unnecessary for the Court at this time to decide the due process arguments asserted in the Petition.

## **CONCLUSION**

The United States Department of Homeland Security through ICE and CBP has the statutory authority and responsibility for detaining and removing from the United States those individuals who are here illegally and are criminals or engaging in criminal activity, or who pose threats to public safety and/or national security. That said, based on the uncontested facts in the record, this Court has no difficulty finding that Petitioner Salazar is not one of those individuals who should be detained and/or removed from the United States.

**IT IS THEREFORE ORDERED** that the Petition for Writ of Habeas Corpus is **GRANTED** and that Respondents **SHALL IMMEDIATELY RELEASE** Petitioner Angel Johan Ahedo Salazar from custody.

**IT IS FURTHER ORDERED** that Counsel for Petitioner shall electronically file with

the Court a status report within **three (3) days** of the date of entry of this Order confirming

Petitioner's release from custody.

                                                 /s/_____
                                                 WILLIAM P. JOHNSON
                                                 SENIOR UNITED STATES DISTRICT JUDGE